·it had not observed its terms; that, though it sent a representative, it never knew the true state of affairs; and that the defendant and the attorneys who represented the creditors in Indiana were guilty of fraud,—the one in asserting that the assets were sufficient to pay all the claims included in the mortgages, and the other by failing to bring home directly and fully every fact connected with the mortgage and judgment.

We agree with the court below that the effort to assail the Indiana judgment as fraudulent was not successfully sustained, and therefore the judgment and order appealed from should be affirmed, with costs. All concur.

(27 Misc. Rep. 90.)

### PRESS PUB. CO. v. ASSOCIATED PRESS et al.

(Supreme Court, Special Term, New York County. April, 1899.)

1. EXAMINATION BEFORE TRIAL—PRODUCTION OF BOOKS—CONTEMPT.

Where an order granted under Code Civ. Proc. § 872, subd. 7, providing for the examination of corporate officers before trial, fixed the date of the examination, and directed the witness to produce at the examination certain books and papers, he need not produce all the books and papers at the time fixed for his attendance, but must produce them from time to time as occasion for their use arises, and on failure to do so is punishable for contempt.

2. SAME—EXCUSE.

To entitle a corporate officer failing to produce books of a corporation on his examination before trial to claim as an excuse lack of possession or control over the books, he must establish that fact, as well as his good faith, by affirmative proof.

3. SAME—WAIVER.

Where an order requiring a corporate officer to produce books of a corporation on his examination before trial has been affirmed on appeal without his raising the question of his ability to produce them, it is too late to do so on the examination.

Action by the Press Publishing Company against the Associated Press and others. Motion to punish Charles M. Palmer for contempt in failing to produce, before a referee appointed to take his deposition, certain books and records. Granted.

John M. Bowers, for plaintiff.
B. F. Einstein, for defendants.

BEEKMAN, J. On December 17, 1897, an order was made by Mr. Justice PRYOR for the examination before trial of William R. Hearst, president of the defendant the Star Company, and Charles M. Palmer, treasurer of the defendant the Morning Journal Association. The witnesses were directed to appear before a referee who was appointed to take such examination on a day fixed by the order. The order also contained a direction that "the said William R. Hearst, as president of the Star Company, defendant herein, produce before the said referee, at the said examination and taking of his deposition as aforesaid, the following books and records of the defendant the Star Company, to wit: Ledgers; journals; register for statements and bills; cash books; paper checker's record of running orders; record book for advertising totals; accounts with country dealers; ledgers;

journals; mail blotters; return books; cash sheets bound monthly; record book for no-name cash; books relating to collections; white-paper accounts; tag or figuring book giving record of white-paper consumption, each edition; lot book giving record of rolls used, and production of each; companies' accounts, giving totals by days and months. Miscellaneous: Subscription cash books; letter books; copy books; records of editorial and art pay rolls; correspondents' rolls, foreign and domestic; contract books; all news dealers' contracts; books containing records of leases." A like direction was given to the witness Charles M. Palmer, as treasurer of the defendant the Morning Journal Association, "to produce at the said examination and taking of his deposition the like books and records of the defendant the Morning Journal Association." A motion was thereafter made to vacate this order, which was denied at special term; and the order there made, after fixing another date for the examination, re-iterated the specific directions given by Mr. Justice PRYOR for the production by each witness of the books and papers mentioned in the original order. From this determination an appeal was taken to the appellate division, which affirmed the order appealed from, and in the order of affirmance also fixed a new day for the examination, and gave similar directions for the production by each witness of the books and papers above enumerated "at the said examination and taking of his deposition." A subpœna duces tecum following the directions of the order was duly served. The examination of the witness Charles M. Palmer then proceeded before the referee. None of the books and papers mentioned in the order above referred to has been produced, although called for by the plaintiff's attorney, and this motion is now made to punish the witness Palmer for a contempt in failing to comply with the directions in that regard which he had received.

In considering the question thus presented, it becomes necessary to determine exactly what was the measure of duty which was imposed upon him under the order. In the first place, he was not bound to produce the books for the purposes of a discovery and inspection, as the order was not made for any such purpose, nor does it in any way sanction such a procedure. The direction for their production was intended to, and could only, be ancillary to the examination of the witness, which is the sole ground upon which authority to make the order rests. As is said by the court in the opinion rendered on the decision of the appeal:

"Its object is that if a reference to the books becomes necessary during the examination, either to corroborate or contradict a witness, or to make the proof preliminary to the introduction of the books in evidence upon the trial, such proof may be made, and the books may be referred to for that purpose. This is not an order for the discovery and inspection of the books, but purely such a one as is authorized by the section of the Code above referred to. [Code Civ. Proc. § 872, subd. 7]." Press Pub. Co. v. Star Co., 33 App. Div. 242, 53 N. Y. Supp. 371.

Manifestly, then, the time when the production of a book becomes obligatory is when, in the course of the examination of the witness, it appears that a reference to the book or its use for any of the legitimate purposes of such examination is necessary or proper. When such an occasion has arisen, a demand for the book renders its produc-

tion imperative, and a refusal to comply is contumacious. That this view does not conflict with the order in question is, I think, quite plain. It is true that literally the order requires the witness to produce the books and papers before the referee on the date fixed for the examination, but the words are added, "at his said examination and taking of his deposition"; importing, upon a reasonable construction, that, when an occasion for their use should arise during the examination, they should be immediately available for that purpose. This fully satisfies the object of the Code provision upon the subject, and therefore of the order made pursuant to its authority. Whatever exceeds that may well be characterized as unreasonable, as it seems to me would be the case if the claim be admitted that the witness should be dealt with as recalcitrant merely because he did not produce every book mentioned in the order or subpœna before the examination had disclosed any occasion whatsoever for their use. The court is always solicitous that its mandates shall not impose unnecessary and vexatious burdens upon those to whom they are issued,—a policy that would certainly be ignored if it should be held that the order in question was disobeyed by the failure of the witness to produce before the referee, simultaneously with his appearance for examination, the great mass of books and papers which have been enumerated. It may safely be affirmed that the appellate division never intended anything of the kind, nor does the order require any such construction. It must be borne in mind, however, that I am dealing solely with the question of the legal duties or obligations imposed upon the witness by the order and subpœna. Practically, it may be necessary for him to have all of the books and papers on hand in order to meet a demand properly made upon him in the course of his examination for the production of one or more of them; for, when such a demand is made, the directions of the order become operative, and a present failure to comply is an act of disobedience. The preparation to meet the demand, when duly made, may therefore involve great hardship; but, if so, it arises from the necessities of the case, and must be submitted to as unavoidable. The court could, and, in a proper case, doubtless would, qualify such a direction as that which has been given here in such a way as to minimize the inconvenience complained of; but it does not appear that any effort was made by the defendants to secure any such modification. Where the examination is being conducted before a justice of the court, the latter could doubtless regulate the production of the books in like manner; and, even where it is had before a referee, although he has no power to rule upon questions of evidence (section 880, Code Civ. Proc.), I still think that his general control of the proceeding is sufficiently broad to justify him in giving such reasonable directions in the matter as would serve the convenience of the witness without prejudicing the examining party in securing every advantage that it was intended and provided he should have under the order. But, of course, such directions must be purely regulative and not in any sense subversive of the mandate of the court.

While, then, I am of the opinion that the witness Palmer cannot be regarded as in contempt for the mere failure to have all of the books

and papers before the referee at the time fixed for his attendance, the record shows subsequent conduct on his part, constituting a violation of the order, sufficient to support the motion.    It appears that while the examination was proceeding a demand was made upon him for two certain ledgers mentioned in the order, and that he refused to produce them.    The report or certificate of the referee to the court contains, among others, the following statement:

"That during said proceedings on said date the counsel for the plaintiff again demanded the production of all the books and papers called for by the order, and specifically demanded the production of a certain ledger kept in March, 1897, by the Morning Journal Association; and the witness then and there declined to produce all or any of the said books and papers called for by said order, and likewise refused to produce the said ledger."

Again the referee certifies that on a subsequent date, to which the examination had been adjourned—.

"The counsel for the plaintiff again demanded the production of the books and papers of the Morning Journal Association and the Star Company, and all the books described in the aforesaid order, and the said Charles M. Palmer refused to produce said books and papers, and at said time and place the counsel for the plaintiff called upon the said Charles M. Palmer to produce the books and papers which by the terms of the aforesaid order he personally was directed to produce, all of which the said Charles M. Palmer refused, and stated that, under the advice of counsel, he should not at any time produce all or any of said books; and again at said time counsel for the plaintiff specifically called upon the said witness to produce a certain ledger of the Morning Journal Association, containing entries made in the month of March, 1897, which said Charles M. Palmer, under the advice of counsel, said he would not then, or at any time, produce."

The referee has also certified to the court the stenographic minutes of all that took place before him, which substantially support the facts which he has stated.    It also appears that the counsel for the plaintiff was most reasonable and accommodating in his treatment of the witness through the entire examination, and was prepared to come to an understanding with the opposing counsel with respect to the production of the books for the purpose of relieving the defendants and the witness from all unnecessary inconvenience.    His overtures, however, in this regard, met with no response.    At session after session the witness was explicitly called upon to produce these specific ledgers, which, with equal explicitness, he declined to do, usually assigning as a reason therefor the advice of counsel.    I am not concerned with the advice so given, beyond yielding it such consideration as it may deserve when determining the extent of the penalty to be inflicted, following an adjudication of contempt.    It is not an excuse which can in any way relieve the witness from his obligation to comply with the order of the court.    The demand for these particular books was properly made, as an occasion for their use in aid of the examination had arisen; and the refusal of the witness to respond constituted a distinct violation of the order, and a contempt which it is impossible for the court to overlook.    It is idle to say that the production of these books had become unnecessary because the witness had, between sessions before the referee, refreshed his recollection from an examination of the books elsewhere, and therefore answered questions which before he had been unable to do correctly.

The counsel for the plaintiff had a clear right to see the particular portion of the books which had. thus assisted the witness. When the question as to the production of the books first came up, apparently the only objection which counsel for defendants made was on the score of inconvenience. At a subsequent session, however, an attempt was made to show that the witness did not have the possession of, or control over, the books. The proof, however, as far as it went, does not afford sufficient evidence of his actual inability to produce them. Indeed, when he was asked whether he could not do so if he wanted to, his counsel promptly objected, and refused to allow him to answer the question. Furthermore, there is no affidavit on this motion tending to show the existence of any such disability. I am satisfied that there was not then, nor is there now, any obstacle in the way of his compliance with the order. Excuses of that kind are treated by the courts with suspicion, and nothing but affirmative proof demonstrating the fact, as well as the good faith of the witness in the matter, will be accepted as satisfactory. Fenlon y. Dempsey, 21 Abb. N. C. 291; Id., 50 Hun, 131, 2 N. Y. Supp. 763. But the time to have raised this question and had it determined was on the motion made by defendants to vacate the original order. That they recognized this is shown by the statement contained in Palmer's affidavit, which was read in support of that motion, where he says, among other things, that the books and papers of the Morning Journal Association were under the control of the defendant Hearst. The court, however, affirmed the order in its entirety, and it is now too late to present this plea, in the absence of evidence of subsequent occurrences which, without fault of the witness, had rendered the production of such books impossible.

It follows that the witness Palmer should be adjudged guilty of a contempt of court for his disobedience of the order and subpœna in the respect above stated. An order will be made accordingly, fining him the costs and expenses of this motion, the amount of which will be determined on the settlement of the order, and committing him to the county jail until the two books above mentioned are produced; the commitment not to issue until five days after the entry of the order. Ordered accordingly.